For Online Publication Only
**FILED
CLERK**
1/11/2018 4:45 pm
**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROBERT BLODGETT, PETER BOULEY,
CHRISTOPHER VISOCKY, and RANDY
ZORNBERG,

                Plaintiffs,

  -against-

**MEMORDANUM & ORDER**
13-CV-3194 (JMA) (AKT)

SIEMENS INDUSTRY, INC.,

                Defendant.
------------------------------------------------------------X

**AZRACK, United States District Judge:**

      Plaintiffs Robert Blodgett, Peter Bouley, Christopher Visocky and Randy Zornberg (together "Plaintiffs") commenced this action against Defendant Siemens Industry Inc. ("Siemens") on June 3, 2013, claiming breach of implied contract, promissory estoppel and misrepresentation. (Compl., ECF No. 1.) On April 21, 2017, Defendant filed the instant motion for summary judgment. (Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 92.) For the reasons set forth below, the Court grants Defendant's motion for summary judgment on all claims.

## I. BACKGROUND

### A. Plaintiffs' Employment with Siemens

      Plaintiffs are former employees of Defendant Siemens. (Def.'s Local Rule 56.1 Stmt. of Facts ("Def.'s 56.1") ¶ 1, ECF No. 94.) Siemens is a Delaware corporation whose primary product is fire protection systems. (Id. ¶ 2.) Plaintiffs were hired by Siemens as territory sales managers for Siemens' Faraday brand of fire protection products for Siemens' Building Technologies Division. (Id. ¶¶ 3-4.) Plaintiffs began their employment with Siemens at

1

different times between 2007 and 2011—plaintiff Blodgett in 2007, plaintiff Zornberg in 2008, plaintiff Bouley in 2009, and plaintiff Visocky in 2011. (Id. ¶ 5.) As territory sales managers for the Faraday product, Plaintiffs were responsible for sales, working with distributors to manage product distribution, and educating distributors about the product, among other duties. (Id. ¶ 6.) Each plaintiff was responsible for a different territory within the United States. (Def.'s 56.1 ¶ 7.) During their employment with Siemens, Plaintiffs worked for a management team consisting of Tom Schlesinger (Senior Director of Product Sales), Kurt Schoonover (Director of Sales/Senior Sales Manager), and Mike Alpher (Sales Manager). (Id. ¶ 8.) Plaintiffs reported directly to Mike Alpher, who in turn reported to Tom Schlesinger and Kurt Schoonover. (Id. ¶ 9.) Neither Alpher, Schlesinger, nor Schoonover had authority to issue employment contracts. (Id. ¶ 10.)

Prior to the commencement of their employment with Siemens, each plaintiff acknowledged an offer letter prepared by Siemens. (Id. ¶¶ 11-14.) The offer letters clearly defined Plaintiffs' employment relationship with Siemens. (Def.'s 56.1 ¶¶ 11-14.) For example, the offer letters signed by plaintiffs Blodgett, Bouley, and Zornberg stated that "Siemens Building Technologies, Inc., is an at-will employer. This means your employment can be terminated at any time by you or by Siemens Building Technologies, Inc., with or without cause and with or without notice." (Id. ¶¶ 11-13.) Similarly, the offer letter accepted by plaintiff Visocky provided:

> This letter sets forth the entire offer of employment. Any promises, agreements or understandings not stated herein are not binding. . . . This offer of employment does not constitute a contract of employment between SII and the employee for any fixed term. All SII employees are employed on an at-will basis, whereby the employment may be terminated with or without cause or advance notice by either the employee or the employer. Further, the terms of employment may be altered at any time at SII's sole discretion. No one other than an officer of SII has the authority to enter into an agreement for employment for a specified period of time, and any such agreement must be in writing and must be signed by you and an officer of SII. No other policies or practices should be construed as varying the at-will status of any employee.

2

(Id. ¶ 14.)

Additionally, Siemens maintained an employee handbook stating that all Siemens employees were at-will employees, and thus could be terminated at any time. (Id. ¶ 15.) All four plaintiffs conceded at their depositions that both their offer letters and the Siemens employee handbook provided explicit notice of their at-will employment status. (Blodgett Dep. 14:11-15:7, 36:19-37:3, ECF No. 97-1, Ex. C; Bouley Dep. 11:7-2, ECF No. 97-1, Ex. D; Visocky Dep. 17:24-18:15, ECF No. 97-1, Ex. E; Zornberg Dep. 19:4-19, ECF No. 97-1, Ex. F.) Plaintiffs also confirmed that they never received any written employment contracts from Siemens memorializing any promises of continued employment. (Def.'s 56.1 ¶ 18.)

**B. Siemens' Reorganization of its Fire Protection Product Business**

Prior to Plaintiffs' employment with Siemens, Siemens acquired the Faraday brand of fire protection products from Cerberus Pyrotronics. (Def.'s 56.1 ¶ 19.) As a result, Siemens sold two lines of fire protection products—a Faraday brand and a Siemens brand. (Id. ¶ 19.) In early 2011, Siemens announced that it planned to introduce a new line of fire protection products that would replace the Faraday and Siemens brands. (Id. ¶ 20.) The entire Siemens fire protection product sales staff would eventually work on this new line of products, as opposed to working on separate products. (Id. ¶ 20.) As part of this proposed reorganization, the Faraday sales team members, including Plaintiffs, became part of the combined Siemens sales team. (Id. ¶ 21.) Siemens planned to merge the Faraday and Siemens sales territories to create 15 sales territories within the United States. (Def.'s 56.1 ¶ 22.)

In late 2011, at an annual summit meeting with distributors, Siemens formally announced the retirement of the Faraday brand and introduced the new line of Siemens fire protection products, Cerberus PRO. (Id. ¶ 23.) The Faraday brand was eventually merged into the

Siemens brand, resulting in Siemens selling one line of fire protection products—Cerberus PRO—to its distributors. (Id. ¶ 24.) Plaintiffs continued working in their existing territories because the plan to create 15 new sales territories within the United States was not approved. (Id. ¶ 25.)

### C. Alleged Promises of Continued Employment

Plaintiffs claim that certain statements made by Schlesinger, Schoonover and Alpher during the pendency of the merger constituted promises of secure employment based on their existing sales achievements and that these statements altered Plaintiffs' at-will status. (Pl.'s Mem. at 1.) Plaintiffs claim that in the fall of 2011, Tom Schlesinger and Kurt Schoonover gave a PowerPoint presentation to all of the territory managers regarding the merger and that during the presentation, Schlesinger and Schoonover communicated that they intended to maintain the same number of territory managers after the merger was completed. (Pl.'s Mem. at 10-11; Visocky Dep. 30:19-32:4.) Plaintiffs also claim that their direct supervisor, Mike Alpher, promised that if they continued to perform well that their jobs would be safe. (Pl.'s Mem. at 11.)

In the two years that followed, three of the four plaintiffs received offers to interview for other jobs, but none of them actually interviewed for those positions nor received offers of employment.[1] (Bouley Dep. 34:13-36:7; Visocky Dep. 47:9-48:11; Blodgett Dep. 81:3-82:21; Zornberg Dep. 81:2-82:14.) There is no evidence that Schlesinger, Schoonover or Alpher were aware of Plaintiffs' offers to interview for other jobs.

### D. Plaintiffs' Termination from Siemens

In late 2012 and early 2013, Siemens failed to reach its expected sales targets and

---

[1] Plaintiff Visocky had applied and interviewed for a managerial position within Siemens in the first half of 2011, but chose to remain in his then-current sales position, as the manager's position was not yet officially available. (Visocky Dep. 29:2-31:18.) There is, however, no evidence that he received any offers to interview for other jobs or other offers of employment any time after the October 2011 PowerPoint presentation, which Visocky characterizes as "the first real promise that I took as a solid promise." (Visocky Dep. 31:19-25.)

4

thereafter initiated a nationwide reduction-in-force in the Building Technologies Division sales team. (Id. ¶ 26, 28.) As part of the reduction-in-force, Plaintiffs were terminated from their jobs with Siemens in April 2013. (Def.'s 56.1 ¶ 29.) In addition to Plaintiffs, Siemens also terminated approximately 40 other employees of the sales team in the Building Technologies Division as part of this reduction-in-force, including Plaintiffs' manager, Mike Alpher. (Id. ¶¶ 28, 30.) Siemens offered Plaintiffs a severance package, which they did not accept. (Id. ¶ 31.) Based on the alleged promises made by Sclesinger, Schoonover and Alpher, Plaintiffs argue that their termination was improper.

### E. Procedural History

Plaintiffs filed their complaint in this action in 2013. The parties then conducted discovery, the majority of which was completed by August 2015. On August 19, 2015, Defendant filed its first pre-motion conference letter requesting leave to file a motion for summary judgment. (ECF No. 71.) On September 8, 2015, Plaintiffs filed a response in which they withdrew their breach of implied contract claim "as it is not a cognizable claim in New York." (ECF No. 76.) In this same letter, Plaintiffs also argued that their remaining claims were viable under New York law.

After the parties conducted some additional discovery, they submitted a second round of pre-motion conference letters in the fall of 2016. In support of its argument for summary judgment, Defendant cited exclusively to New York law. (ECF No. 81.) In their letter, Plaintiffs responded to the substance of Defendant's letter, but did not cite any cases and did not reference the law of any particular jurisdiction.[2] (ECF No. 83.)

The parties then briefed the motion for summary judgment. In its moving papers,

---

[2] Plaintiffs' response makes mention of their previously withdrawn claim for breach of implied contract, but does not request that the claim be reinstated.

Defendant relied exclusively on New York law. (ECF No. 93.) In their opposition papers, for the first time, Plaintiffs argued that New Jersey law should apply and sought to revive their previously dismissed claim for breach of implied contact. (ECF No. 96.)

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' for these purposes if it might affect the outcome of the suit under the governing law," "while [a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (internal quotation marks omitted). "When ruling on a summary judgment motion, [the court] must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

### A. Local Rule 56.1 Statements

Local Civil Rule 56.1 requires a party moving for summary judgment to submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which there is no genuine issue to be tried," together with "citation[s] to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." See Local R. 56.1(a), (d). Defendant

complied fully with this requirement. In response, Plaintiffs were required to submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party" followed by citations to admissible record evidence. See Local R. 56.1(b), (d); see also Individual Rules of Hon. Joan M. Azrack IV(D). In breach of this obligation, Plaintiffs failed to submit a responsive statement.

"Local Rule 56.1 subsection (c) instructs that each paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the summary judgment motion 'unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.'" JB Aviation, LLC v. R Aviation Charter Servs., LLC, No. 14-CV-5175, 2017 WL 3887885, at *1 (E.D.N.Y. Sept. 5, 2017); Local R. 56.1(c). The rule does not, however, "absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law," nor is a Local Rule 56.1 statement "itself a vehicle for making factual assertions that are otherwise unsupported in the record." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001) abrogated on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009). Although a district court has discretion to "determine whether to overlook a party's failure to comply with the local court rules," id. at 73, the Court finds no reason here to overlook Plaintiffs' failure to submit a Local Rule 56.1 statement. Accordingly, the Court has deemed admitted all material facts set forth in Defendant's Rule 56.1 statement "to the extent that they are adequately supported with record evidence." JB Aviation, LLC, 2017 WL 3887885, at *1.

In any event, in an abundance of caution, the Court has also considered all of the evidence that Plaintiffs cite in their opposition brief. As explained infra, even when this evidence is considered, none of Plaintiffs' claims survive summary judgment.

7

### B. Choice of Law

Before addressing the merits of the parties' arguments, the Court must determine which law applies. In their Opposition, Plaintiffs contend, for the first time, that New Jersey law should apply because they have discovered after "considerable research" that while New York law does not recognize causes of action for breach of an implied contract, New Jersey law does. (Pl.'s Mem. at 3.) Plaintiffs' argument is without merit.

As Defendant correctly points out, Plaintiffs filed this action in New York in 2013 and, prior to submitting their opposition brief, have never even hinted that any law other than New York law should apply. Courts look to the parties' conduct during litigation in determining whether a party consented to application of the forum's law, and for the last four years the parties have litigated this case on the assumption that New York law applies. Cf. Shatkin v. McDonnell Douglas Corp., 727 F.2d 202, 206 n.1 (2d Cir. 1984) (applying New York law where "the parties have conducted the entire litigation on the assumption that New York law governs").

More importantly, in their September 8, 2015 letter to the Court, Plaintiffs specifically withdrew their breach of implied contract claim because "it is not a cognizable claim in New York." (ECF No. 76.) In that same submission, Plaintiffs argued that their remaining claims were cognizable under New York law, citing only New York case law in support. (Id.) Plaintiffs also submitted a letter in response to Defendant's second pre-motion letter on November 1, 2016. None of these submissions indicated that New Jersey law, or the law of any jurisdiction other than New York might apply to the claims in this suit. Plaintiffs cannot now, at this late stage of litigation, change their strategy and argue that New Jersey law should apply (and that their withdrawn claim for breach of implied contract should be revived) because only now have they fully researched the relevant issues. Cf. Cousins v. Instrument Flyers, Inc., 44 N.Y.2d 698, 700 (1978) ("Plaintiff chose to sue in New York, and the parties and the court

proceeded, reasonably, in view of the many relevant factors, assuming that New York law would apply on the now disputed issue. Only after all the proof had been received and just before the jury was to be charged did plaintiff's highly experienced counsel suggest application of Pennsylvania law. Plaintiff had already chosen his strategy, based on New York law, and it was late to change it after the unfavorable testimony had unfolded.").

Plaintiffs' decision to voluntarily withdraw their claim for breach of implied contract and their citation solely to New York law in support of their other claims in their prior submissions is deemed by this Court to constitute an implied consent to use New York law, which settles the choice of law issue in favor of the application of New York law. However, it should be noted that even if the Court were to apply New Jersey law, Plaintiffs claims would still fail as a matter of law.

### C. Plaintiffs' Claims

#### i. *Promissory Estoppel*

Plaintiffs base their claim for promissory estoppel, in part, on the comment made by Schlesinger and Schoonover that Siemens intended to maintain the same number of territory managers after the merger was completed. (Pl.'s Mem. at 10-11; Visocky Dep. 30:19-32:4.) That Schlesinger and Schoonover communicated this intention during a 2011 presentation to the territory managers is not disputed by Defendant. (See Def.'s 56.1 ¶ 22.) Additionally, Plaintiffs claim in their opposition papers that their direct supervisor, Mike Alpher, told them that "as long as they kept their numbers in the same range as in the past, their jobs would be safe." (Pl.'s Mem. at 11.) To support this assertion, Plaintiffs cite deposition testimony by Alpher in which Alpher states that he told the territory managers that their "security [was their] ability to operate effectively and produce effectively," (Alpher Dep. 28:15-19), and that he told the managers that they needed to "make [their] numbers" and "make [their] quota." (Alpher Dep. 29:23-30:5.)

9

Plaintiffs claim that these statements constituted oral promises of continued employment upon which they all relied in choosing not to pursue employment with other companies. (Bouley Dep. 34:13-36:7; Visocky Dep. 47:9-48:11; Blodgett Dep. 81:3-82:21; Zornberg Dep. 81:2-82:14.)

As a threshold matter, Plaintiffs' claims fail as a matter of law because "New York law does not recognize promissory estoppel in the employment context." Wittig v. Mount Sinai Med. Ctr., Inc., No. 14-CV-5808, 2014 WL 7234612, at *2 (S.D.N.Y. Dec. 18, 2014) (quoting Deutsch v. Kroll Assocs., Inc., No. 02–CV–2892, 2003 WL 22203740 (S.D.N.Y. Sept. 23, 2003); Shapira v. Charles Schwab & Co., 225 F. Supp. 2d 414, 419 (S.D.N.Y. 2002) ("New York does not apply the doctrine of promissory estoppel in the employment context."). However, even if New York law recognized such a cause of action, Plaintiffs' claims would still fail as they cannot demonstrate reasonable reliance.

In order to bring a claim for promissory estoppel, Plaintiffs must prove that they reasonably relied on the alleged promises made by Schlesinger, Schoonover and Alpher to their detriment. Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996). It is well-established that at-will employees cannot reasonably rely on representations supposedly promising them continued employment in the future. See, e.g., Hughes v. Standard Chartered Bank, PLC, No. 09-CV-4595, 2010 WL 1644949, at *7 (S.D.N.Y. Apr. 14, 2010) ("The plaintiff's status as an at-will employee renders any reliance on a representation of continuous employment unreasonable."); Jaffe v. Aetna Cas. & Sur. Co., No. 93-CV-0385, 1996 WL 337268, at *3 (S.D.N.Y. June 19, 1996) ("An employee's reliance on general assurances of long term employment is not reasonable."), aff'd, 113 F.3d 1229 (2d Cir. 1997); Marino v. Oakwood Care Ctr., 5 A.D.3d 740, 774 N.Y.S.2d 562 (N.Y. App. Div. 2d Dep't 2004) (holding that an at-will employee cannot establish reasonable reliance, a necessary element for a claim of promissory estoppel). As it is undisputed in this case that Plaintiffs were at-will employees, they

cannot establish reasonable reliance on any oral assurances of continued employment.

Were the Court to consider this claim under New Jersey law, the outcome would be the same. Under New Jersey law, an employee who has been given explicit notice of his at-will employment status in the form of either an employment contract or employee handbook, cannot establish reasonable reliance for the purposes of a claim of promissory estoppel. See Worbetz v. Ward N. Am., Inc., 54 F. App'x 526, 532 (3d Cir. 2002) ("Because Worbetz agreed to be employed 'at will' in documents he signed before and during the course of his employment, he cannot show reasonable reliance on a promise of employment on a commission basis for a two year term."); Taylor v. Lincare, Inc., No. 15-CV-6284, 2016 WL 3849852, at *12 (D.N.J. July 15, 2016) ("[R]eliance on any oral assurances or communications regarding Plaintiff's employment status would be unreasonable in light of the disclaimer in the Lincare employee handbook received and signed by Plaintiff, which prominently and explicitly stated that 'nothing in this handbook or any other policy or communication changes the fact that employment is at-will and may be terminated at any time by you or by the Company with or without cause or notice' . . . ."). Plaintiffs concede that both their offer letters and the Siemens employee handbook provided explicit notice of their at-will employment status. (Blodgett Dep. 14:11-15:7, 36:19-37:3; Bouley Dep. 11:7-2; Visocky Dep. 17:24-18:15; Zornberg Dep. 19:4-19). Therefore, Plaintiffs cannot establish reasonable reliance pursuant to New Jersey law.

  *ii.*   *Misrepresentation*

Plaintiffs' claim for misrepresentation fails for the same reason. Under New York law, reasonable reliance is a crucial element necessary to establish a claim for either negligent or fraudulent misrepresentation. See Hydro Investors. Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000); Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997). Similar to Plaintiffs' claim for promissory estoppel, Plaintiffs cannot establish reasonable

reliance given their at-will employment status. See Gencarelli v. Cablevision Sys. Corp., No. 10-CV-04092, 2012 WL 1031441, at *4 (E.D.N.Y. Mar. 27, 2012) ("[S]ince an at-will employment contract can be terminated at any time, a plaintiff cannot establish the requisite element of reasonable reliance on the alleged representations by [defendant] regarding future employment."); Marino, 774 N.Y.S.2d at 563 ("[S]ince the plaintiff was offered only at-will employment, she cannot establish reasonable reliance, a necessary element to recover damages on theories of fraudulent misrepresentation, negligent misrepresentation, and promissory estoppel.").

The result is the same under New Jersey law. See Andreula v. Capital One Fin. Corp., No. 14-CV-5276, 2016 WL 6953422, at *4 (D.N.J. Nov. 28, 2016) ("In sum, the Court holds that summary judgment is appropriate because the alleged misrepresentation impacted the terms of [plaintiff's] employment, and his at-will employment status made any reliance on such misrepresentation unreasonable as a matter of law."); De Franco v. AT&T Corp., No. A-1708-06T1, 2007 WL 2302324, at *5 (N.J. Super. Ct. App. Div. Aug. 14, 2007) (holding that an employee cannot reasonably rely on a manager's assurances of job security that directly contradict a written policy establishing the employee's at-will status).

Plaintiffs' only counter-argument to this well-established rule is a quote from Shebar v. Sanyo Bus. Sys. Corp., 544 A.2d 377 (N.J. 1988). (See Pl.'s Mem. at 13 ("In *Shebar v. Sanyo,* the court reasoned 'Plaintiff acted in reliance on the alleged promise by forgoing the job opportunity he had secured at Sony.'").) This quote, however, is taken out of context as the Court in Shebar was discussing the plaintiff's reliance on the alleged promise in the context of his claim for breach of contract, not misrepresentation. See Shebar, 544 A.2d at 284 ("The primary issue in this appeal is plaintiff's breach of contract claim."). Additionally, Shebar is factually distinguishable from this case given that in Shebar, there were no documents explicitly

notifying plaintiff of his at-will employment status.

### iii. Breach of Implied Contract

As discussed earlier, Plaintiffs voluntarily withdrew their claim for breach of implied contract as it is not cognizable under New York law. See supra, at 7. The Court will not permit Plaintiffs to revive that claim. However, even if the Court were to consider that claim and analyze it under New Jersey law, it would still fail.

A cause of action for breach of contract under Shebar requires that Plaintiffs demonstrate the existence of: "(1) a contract sufficiently clear and capable of judicial interpretation that is not vague or indefinite; and (2) adequate consideration." Swider v. Ha-Lo Indus., Inc., 134 F. Supp. 2d 607, 618 (D.N.J. 2001). To establish adequate consideration, Plaintiffs must show that Defendant made promises of employment for the specific purpose of inducing Plaintiffs to turn down other job offers and that Plaintiffs relied on those representations in turning down those offers. Id. at 619. Here, Plaintiffs have failed to provide evidence of any definite promises, let alone that such promises were made for the purpose of inducing Plaintiffs to turn down specific job offers and remain at Siemens. Critically, there is no evidence showing that Schlesinger, Schoonover or Alpher even knew about any of the interview offers Plaintiffs received during the relevant time period. Accordingly, Plaintiffs' claims fail for lack of consideration. See id. (explaining that "mere offers of employment that are declined are insufficient to satisfy the requirement of consideration" and finding that plaintiff failed to establish consideration because the defendant was not aware of his offer from the other employer and, thus, the "defendant's assurances could not have been intended to induce plaintiff to turn down that offer."); see also Maietta v. United Parcel Service, Inc., 749 F. Supp. 1344, 1365 (D.N.J. 1990) ("Assuming the truth of [plaintiff's] assertions, however, his receipt of these job offers does not constitute the additional consideration necessary under Shebar to enforce an oral employment contract

providing for termination for cause only."). Without evidence that the alleged promises made by Schlesinger, Schoonover and Alpher "were made to induce [Plaintiffs] to reject specific job offers . . . the bargained-for exchange necessary to enforce an employer's oral promise to limit its right to terminate an at-will employee is not present in the instant case." Swider, 134 F. Supp. 2d at 619. Therefore, even if considered by this Court, Plaintiffs' claim for breach of implied contract would fail as a matter of law.

### III.　CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of Defendant and all of the claims in the complaint are hereby dismissed.

**SO ORDERED.**

Date:　January 11, 2018
　　　　Central Islip, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ (JMA)
　　　　　　　　　　　　　　　　　　　　　　　　Joan M. Azrack
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge